# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIEDAD Q. LOPEZ, | 1:09-cv-1824 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs.4, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1965 and completed the fifth grade in Mexico. (Administrative Record ("AR") 585.) Plaintiff previously worked as a stock selector, thread drawer, and semiconductor loader. (AR 35.) She stopped working in June or July 2001 because of a work injury. (AR 24.) On October 12, 2004, Plaintiff filed applications for DIB and SSI, alleging disability beginning on July 30, 2001, due to lupus. (AR 5, 171-73, 205.)

**A.     Medical Evidence**

**1.     Daniel Watrous, M.D.**

On May 7, 2002, Plaintiff saw Dr. Watrous, a rheumatologist, and complained of aches and pains in her muscles and joints. (AR 337.) A physical examination revealed no significant tenderness to palpation or stress testing in the peripheral joints. (AR 337.) There was no evidence of vasculitis, tendonitis, bursitis, or fibromyalgia tender points. (AR 337.) Dr. Watrous diagnosed Plaintiff with "probable thyroid disease, which very well may be autoimmune," but doubted that Plaintiff had lupus. (AR 337.)

More than two years later, on August 3, 2004, Plaintiff returned to Dr. Watrous, complaining of increasing pain in her shoulders, knees, and paralumbar muscles, making it very difficult to be active. (AR 336.) Dr. Watrous's diagnoses included arthralgias and hypothyroid. (AR 336.)

On October 5, 2004, Plaintiff complained of weakness on her right side, complaining that her right arm was uncomfortable when she tried to comb her hair and that she occasionally dropped things. (AR 335.) Dr. Watrous recommended a weight loss and exercise program, but did not believe that Plaintiff had an autoimmune disease. (AR 335.)

**2.     Plaintiff's Function Report**

On November 10, 2004, Plaintiff completed as part of her applications a function report, which the ALJ summarized in his decision as follows:

> [Plaintiff] stated she lives in a house with her family. In the morning at 7:30 AM she makes breakfast and then drives her children to school. She takes care of her youngest child, who was then 3 years old. She makes dinner and cleans up the kitchen when she feels good. No one else helps her care for her family. She has no

2

problem in personal care, such as bathing, caring for her hair, or feeding herself. She needs no special reminders to take care of personal needs and grooming. She prepares complete meals daily, and it takes her about 1 ½ hours. She washes dishes, sweeps floors, and washes clothes, but does no yard work. It takes her about 1 ½ hours to wash dishes and sweep the floor, which she does once a day. She goes outside twice a day. She walks and drives a car. She can follow spoken and written instructions well.

[Plaintiff] says her ability to handle money has changed, but does not say in what way. She gives no details except to say she can pay bills, count change, handle checking and savings accounts and shop by herself. She shops in stores for groceries, clothing, and household items. She spends about 2 hours a week shopping. Her hobbies are reading and watching television. She reads 2 or 3 times a week, and watches television every day. She can only read for a short time, as she gets headaches. She spends time with others on the phone 2 or 3 times a week. She does not need to be reminded to go places, and does not need anyone to accompany her. She gets along well with authority figures. She has never been laid off or fired from a job because of problems getting along with others. She can handle changes in routine fairly well. She stated she has a fear of being alone and a fear of heat.

(AR 25, 226-33.)

### 3.     Michael S. Barnett, M.D.

On December 9, 2004, Dr. Barnett, a board-certified psychiatrist, performed a consultative examination of Plaintiff. (AR 255-57.) Plaintiff's chief complaint to Dr. Barnett was that she became forgetful. (AR 255.) Plaintiff also stated to Dr. Barnett that she had "looked for work, but has been unsuccessful at finding any." (AR 255.)

Plaintiff reported to Dr. Barnett that she "will forget what she is doing at times and feels depressed to the point that she does not want to get up or groom herself." (AR 31, 255.) Plaintiff also stated that she had been feeling very withdrawn and had a sleeping problem for eight months. (AR 31, 255.) Her appetite had decreased, but her weight had increased. (AR 31, 255.) Plaintiff's energy was low, her concentration was poor, and she was tearful every day. (AR 31, 255.) According to Plaintiff, she heard a voice calling her about once a week. (AR 31, 255.) "The voices scare her and she looks to see who is there. She said she feels people watch her and that they can put thoughts in her head." (AR 31, 255.)

Dr. Barnett diagnosed Plaintiff with "Major Depressive Disorder, Single Episode, Severe, with Mood-Congruent Psychotic Symptoms." (AR 256.) Dr. Barnett further opined as follows:

3

> [Plaintiff] has an acute psychotic depression. It is possible that her recent head injury may be contributing negatively to her mood status. Treatment with antidepressant and neuroleptic medications should be beneficial in restoring her functioning from a psychiatric point of view. There are educational limitations that would limit the number of jobs open to her in any case. Her [mental status examination] performance is appropriate for her educational level. Her depressive and psychotic symptoms would interfere with her ability to do work-related tasks in an eight-hour work situation. [Plaintiff] would have difficulty being able to understand and remember simple or complex work-related instructions and tasks. [Plaintiff] would not be able to sustain focused attention and concentration long enough to complete routine work-related tasks in a timely and appropriate way. She would need special or additional supervision. [Plaintiff] would not be able to interact independently, appropriately and effectively with coworkers, supervisors and the public. [Plaintiff] would be incapable of adapting to changes, hazards or stressors in the work environment.

(AR 256-57.)

### 4. State Agency Physicians

On January 25, 2005, a state agency medical consultant, Brian Ginsburg, M.D., completed a psychiatric review technique form in which he opined that Plaintiff's major depressive disorder was not severe. (AR 347, 350.) Dr. Ginsburg concluded that Plaintiff's restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace were none to mild and that Plaintiff exhibited no difficulties in maintaining social functioning. (AR 31, 357.) Another state agency physician, Evangeline Murillo, M.D., affirmed Dr. Ginsburg's findings on August 29, 2005. (AR 347, 361-62.)

### 5. Joshua Trujillo, M.D.

On January 11, 2007, at Plaintiff's request, Dr. Trujillo completed a residual functional capacity ("RFC")[2] questionnaire (AR 410-14), in which he "went over the form page by page" with Plaintiff and "filled out responses based on her history and difficulty." (AR 435.) Dr. Trujillo noted that Plaintiff had a "history of lupus" and referred Plaintiff back to Dr. Watrous "so he can confirm

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

the diagnosis of lupus and help us with any further treatment options." (AR 435.) Dr. Trujillo's diagnoses included systemic lupus erythematosus, hypothyroid, depression, anxiety, and chronic pain. (AR 410.)

Dr. Trujillo opined on the questionnaire as follows:

- Plaintiff's pain, fatigue, or other symptoms were severe enough to "frequently" interfere with attention and concentration needed to perform even simple work tasks. (AR 28, 411.)

- Plaintiff could maintain attention and concentration for 15 to 20 minutes at a time. (AR 28, 411.)

- Plaintiff was incapable of even "low stress" jobs and could walk only a block or two. (AR 28, 412.)

- Plaintiff could sit or stand for only 20 to 30 minutes at a time. (AR 28, 412.)

- In an eight-hour work day, Plaintiff could stand or walk for less than two hours and could sit for about two hours. (AR 28, 412.)

- Plaintiff would need to walk around every 20 minutes for 13 to 15 minutes at a time. (AR 28, 412.)

- Plaintiff would need to shift positions at will from sitting, standing, or walking. (AR 28, 413.)

- Plaintiff would need to take unscheduled breaks every one or two hours for 10 to 15 minutes. (AR 28, 413.)

- Plaintiff would not need to elevate her legs. (AR 28, 413.)

- Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (AR 28, 413.)

- Plaintiff had substantial environmental, postural, reaching, and grasping limitations. (AR 28, 413-14.)

- Plaintiff would need to miss work more than four days per month. (AR 28, 414.)

### 6. Christopher Rodarte, M.D.

On October 2, 2008, Plaintiff complained to Dr. Rodarte of the Family Healthcare Network in Visalia that she was suffering from shoulder pain and recurrence of her headaches. (AR 469.) According to Plaintiff, her headaches were primarily on the left side, and she occasionally would lose

5

vision in her left eye. (AR 469.) Plaintiff stated that her headaches could last up to two hours or more and that she had these headaches twice in the past month. (AR 469.) Dr. Rodarte noted the financial stressors in Plaintiff's life and opined that Plaintiff's headaches were possible migraines. (AR 469.)

On January 15, 2009, Dr. Rodarte completed an RFC questionnaire (AR 526-30), in which he opined as follows:

- Plaintiff's pain, fatigue, or other symptoms were severe enough to "frequently" interfere with attention and concentration needed to perform even simple work tasks. (AR 527.)

- Plaintiff could maintain attention and concentration for one hour at a time. (AR 527.)

- It was unknown how many city blocks Plaintiff could walk without rest or severe pain. (AR 528.)

- Plaintiff could sit for 30 to 45 minutes before needing to get up. (AR 528.)

- Plaintiff could stand for 30 to 45 minutes before needing to sit down or walk around. (AR 528.)

- Plaintiff could sit and stand/walk for a total of about two hours in an eight-hour working day. (AR 528.)

- Plaintiff would need to walk every 60 minutes for 15 minutes at a time during an eight-hour working day. (AR 528.)

- Plaintiff would require a job allowing her to shift positions at will from sitting, standing, or walking. (AR 529.)

- Plaintiff would need to take unscheduled breaks every two hours for 15 minutes at a time during an eight-hour working day. (AR 529.)

- If Plaintiff sat for a prolonged period of time, she would need to elevate her legs. If Plaintiff had a sedentary job, she would need to elevate her leg for four to eight hours during an eight-hour working day. (AR 529.)

- Plaintiff could lift and carry frequently less than ten pounds and rarely up to 20 pounds. (AR 529.)

- Plaintiff could occasionally look down and frequently turn her head left or right, look up, and hold her head in a static position. (AR 529.)

- Plaintiff could occasionally twist and climb stairs, but rarely stoop, crouch, or climb ladders. (AR 529.)

- Plaintiff was likely to be absent from work about three days per month as a result of her impairments. (AR 530.)

Dr. Rodarte noted that all his responses to the questionnaire were "subjective in [his] discussion with [Plaintiff]." (AR 530.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 38-50, 91-95, 98-106.)

On January 24, 2007, ALJ James P. Berry held a hearing and issued a decision on March 15, 2007, finding Plaintiff not disabled. (AR 51-66, 538-55.) The Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the case to the ALJ on August 15, 2007, to (1) obtain additional evidence concerning Plaintiff's musculoskeletal and mental conditions, (2) evaluate further Plaintiff's mental impairments, and (3) consider further Plaintiff's RFC. (AR 70-73, 127-28.)

On December 10, 2007, ALJ Berry held a hearing and issued a decision on January 24, 2008, again finding Plaintiff not disabled. (AR 74-86, 556-80.) The Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the case to the ALJ on April 25, 2008, to (1) obtain additional evidence concerning Plaintiff's mental and hypothyroid conditions, (2) evaluate further a lay witness statement and Plaintiff's subjective complaints, (3) evaluate further Plaintiff's mental impairments, and (4) address Plaintiff's obesity. (AR 87-90, 148-49.)

On February 17, 2009, upon remand from the Appeals Council, ALJ Christopher Larsen held a hearing where Plaintiff and a vocational expert ("VE") testified. (AR 581-604.)

**1.     Plaintiff's Testimony**

The ALJ summarized in his decision Plaintiff's testimony at the February 2009 hearing as follows:

> [Plaintiff] testified she completed the fifth grade in Mexico. She cannot read or write in the English language, but does understand some English. She last worked

in June or July of 2001 on electronic motorcycle parts. She lifted 60 or 70 pounds. She stopped because a motorcycle engine fell on her head. Previously, she worked taking thread off pants, lifting up to 15 pounds. Before that, she did assembly work in Santa Ana from June, 1993, to July, 1996, where she lifted about 5 pounds.

[Plaintiff] testified her impairments are her right arm, headaches, lupus, pain in her bones and a thyroid problem. She had an operation on her knee on May 8, 2008. She is treated by the Family Health Care Network in Visalia. She is still taking the medications listed on the medications list she filled. She has vomiting and nausea. She has been to a hospital for that condition and is waiting for another medical appointment. Every time she eats or drinks something, even water, she throws up. This happens 5 or 6 times every day. This has been going on for about a year. She says she cannot bear the pain in her arms anymore. She has pain in her joints, knees, ankles, spine and neck. This is a burning pain, like chili peppers, always and all the time in her arms and fingers. She has headaches every day, most of the day. The doctors don't know the cause. The doctor said it is normal because of the lupus. She takes medicine and it helps very little. She gets rashes from the codeine.

[Plaintiff] testified she can lift 10 to 15 pounds. She can stand for 10 to 20 minutes and can sit about the same length of time. She can walk two blocks. She takes two or three breaks to lie down each day. She has good days and bad days; more than half her days are good days. She can concentrate for 10 minutes at a time; then her head begins to hurt, starting from the temple to the back of the head. Her activities of daily living consist of going out and walking a little bit, then coming back inside. She watches television for maybe 20 to 25 minutes. She does not do housework, and does not shop, mop, or vacuum. There are no activities she likes to do. She goes to church two times a month. She dresses herself and drives when she is feeling better. She weighed 220 pounds but has lost 40 pounds in the last year.

(AR 24-25 (internal citation omitted), 585-97.)

**2.      Vocational Expert's Testimony**

The VE testified that Plaintiff's past job as a parts picker or stock selector as she performed it was unskilled and heavy, her past job as a thread drawer was unskilled and light, and her past job as a semiconductor loader was unskilled and sedentary.[3] (AR 599-600.)

A hypothetical person of Plaintiff's age, education, and work experience could not perform Plaintiff's past relevant work if that person could perform light work but only perform simple, repetitive tasks and handle and finger with both hands frequently. (AR 600-01.) Such a person

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* §§ 404.1567(b), 416.967(b). "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." *Id.* §§ 404.1567(d), 416.967(d).

could, however, perform the jobs of Mexican food machine tender, machine feeder, and house cleaner. (AR 35, 601-02.) Such a person could not perform any work if that person could only stand and walk for less than two hours and sit for no more than two hours. (AR 602-03.) Finally, such a hypothetical person could not perform any work if that person (1) could not maintain attention and concentration in two-hour increments during an eight-hour work day or (2) would miss three days a month at work. (AR 603.)

C.   **ALJ's Decision**

On July 1, 2009, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of July 30, 2001. (AR 14-36.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform her past relevant work; but (5) could perform other jobs in significant numbers in the national economy. (AR 22-36.)

The ALJ found that Plaintiff had the RFC to (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand and walk for six hours in an eight-hour workday; (3) sit for six hours in an eight-hour workday; (4) handle and finger objects with both hands frequently; and (5) perform simple, repetitive tasks. (AR 24.)

In doing so, the ALJ gave "substantial weight to the opinions of the state agency's doctors regarding the psychiatric aspects of [Plaintiff's] alleged disability," finding that the "opinions and conclusions of the state-agency doctors about [Plaintiff's] mental condition are consistent with the record as a whole." (AR 34.)

The ALJ gave "little weight to the opinion of Dr. Trujillo who listed lupus first as one of several diagnoses. The doctor's clinical notes and reports seem to lack awareness of the opinion of the rheumatologist that she does not have lupus." (AR 33.) "While [Dr. Trujillo] lists chronic pain,

he does not discuss the cause of the pain, and does not give any details or descriptions of the activities that cause or increase the pain." (AR 33.) "[Dr. Trujillo] does not give reasons or support for the rather severe limitations he outlines. Further, the doctor makes clear he went over the form disability report with [Plaintiff], and filled out the responses based on what she told him." (AR 33.)

The ALJ gave "little weight" to Dr. Rodarte's opinion because he "does not give any reasoning or support for the very restrictive limitations he reports. Further, he makes it clear near the end of his report that all of his reporting on the form is based on the subjective complaints of [Plaintiff]." (AR 33.)

The ALJ gave "no weight to the opinion of the consultative psychiatrist, Dr. Barnett. He did not review the record, and seems to have accepted the subjective complaints and statements of [Plaintiff] at face value, giving full credence to all that she said." (AR 34.) The ALJ further found that Plaintiff's "complaints as given to Dr. Barnett . . . are inconsistent with her testimony. The statements [Plaintiff] made to Dr. Barnett are not credible, and he has based his opinion on those statements." (AR 34.) The ALJ also found that "[t]he opinions of Dr. Barnett are inconsistent with the opinions of the other doctors and are inconsistent with the overall record." (AR 34.)

As for Plaintiff's credibility, the ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce her alleged symptoms, but her statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with [the ALJ's] evaluation of [Plaintiff's] residual functional capacity." (AR 31.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 18, 2009. (AR 9-13.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.    Plaintiff's Appeal**

On October 15, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in finding Plaintiff not credible and in failing to adopt the opinions of Drs. Trujillo, Barnett, and Rodarte.

10

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

**REVIEW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering

her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    The ALJ's Consideration of Plaintiff's Credibility**

Plaintiff maintains that the ALJ erred in finding her not credible. The Commissioner asserts, however, that the ALJ gave several valid reasons for discounting Plaintiff's testimony.

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.*

12

The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2. Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 31.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

The ALJ found multiple inconsistencies in the record. Inconsistent statements are matters appropriately considered in evaluating a claimant's subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the

nature, severity, and effect of the symptoms of which the claimant complains. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

In this case, the ALJ found that Plaintiff's "statement to the consultative psychiatrist that she has looked for work, but was unable to find any work, is inconsistent with her claims that she has been unable to work." (AR 32.) Further, the ALJ determined that Plaintiff's claims of psychotic symptoms that she reported to the consultative psychiatrist, such as hearing voices, turning to look for the source of the voices, and a belief that other people could put thoughts in her head, were inconsistent with the records of the clinic where she was being treated. (AR 32.) The ALJ noted that Plaintiff did not mention these symptoms to her treating doctors and other professionals, nor did she mention them in her testimony. (AR 32.) The ALJ also found that Plaintiff's "claim to the psychiatrist that her primary problem is 'forgetfulness' is not consistent with the medical records and is not consistent with her activities of daily living. She did not mention forgetfulness in her testimony as her primary complaint, or as a complaint." (AR 32.)

The ALJ further found as follows:

> [Plaintiff's] testimony regarding the frequency, duration, and severity of headaches is inconsistent with the statements [Plaintiff] made to Dr. Rodarte on October 2, 2008. She saw the doctor because of recurrence of headaches lasting up to two hours which had occurred twice in the previous month. This was more frequent than before. The doctor thought the headaches were due to tension. This medical record is inconsistent with [Plaintiff's] testimony that she gets headaches lasting most of the day every day. This portion of her testimony is inconsistent with her testimony that she has good days more often than she has bad days. . . . [Plaintiff's] testimony that her doctors do not know the cause of her headaches is not consistent with this record. Her testimony that her doctor told her the headaches are caused by the lupus condition and nothing can be done about them is not consistent with this medical record.

(AR 32-33.)

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *See Batson v.*

14

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

**B.     The ALJ's Weighing of Medical Opinions**

Plaintiff next contends that the ALJ erred in failing to adopt the opinions of Drs. Trujillo, Barnett, and Rodarte. Defendant maintains, however, that their opinions were entitled to less weight because they were either based on Plaintiff's subjective complaints or inconsistent with the medical evidence.

**1.     Legal Standard**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and, therefore, have a greater opportunity to know and observe the claimant. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. The ALJ may give less weight to a treating or examining physician's opinion that conflicts with the medical evidence, however, if the ALJ provides specific and legitimate reasons for discounting the opinion. *See Lester*, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); *see also Orn*, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that

15

constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" (citations omitted)); Social Security Ruling 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).[4]

**2.   Analysis**

Here, the ALJ gave "little weight" to Dr. Trujillo's opinion because the "the doctor makes clear he went over the form disability report with [Plaintiff], and filled out the responses based on what she told him." (AR 33.) Further, the ALJ gave "little weight" to Dr. Rodarte's opinion because "he makes it clear near the end of his report that all of his reporting on the form is based on the subjective complaints of [Plaintiff]." (AR 33.) The ALJ also gave "no weight" to Dr. Barnett's consultative opinion because he "seems to have accepted the subjective complaints and statements of [Plaintiff] at face value, giving full credence to all that she said." (AR 34.)

"A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation marks omitted). Because, as explained above, the ALJ properly discounted Plaintiff's credibility regarding her limitations, the ALJ also properly rejected the findings of Drs. Trujillo, Rodarte, and Barnett to the extent they were primarily based on Plaintiff's subjective complaints. *See Bray*, 554 F.3d at 1228 (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's self-reporting is not credible); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (affirming ALJ's rejection of treating physician's opinion based on claimant's self-reports, which ALJ found were not credible); *Fair v.*

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

16

*Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding treating physician's opinion because it was premised on plaintiff's subjective complaints, which the ALJ had already discounted).

Moreover, the ALJ discounted Dr. Trujillo's opinion because the doctor's "clinical notes and reports seem to lack awareness of the opinion of the rheumatologist that [Plaintiff] does not have lupus." (AR 33.) "While [Dr. Trujillo] lists chronic pain, he does not discuss the cause of the pain, and does not give any details or descriptions of the activities that cause or increase the pain." (AR 33.) "[Dr. Trujillo] does not give reasons or support for the rather severe limitations he outlines." (AR 33.) The ALJ likewise gave little weight to Dr. Rodarte's opinion because he did "not give any reasoning or support for the very restrictive limitations he reports." (AR 33.) The ALJ also discredited Dr. Barnett's opinions because they "are inconsistent with the opinions of the other doctors and are inconsistent with the overall record." (AR 34.)

Because the lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion, these were also specific, legitimate reasons for the ALJ to discount the opinions of Drs. Trujillo, Rodarte, and Barnett. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Batson*, 359 F.3d at 1195 (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings). In short, the ALJ provided specific, legitimate reasons supported by substantial evidence for discounting the opinions of Drs. Trujillo, Rodarte, and Barnett.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,

///

///

17

1  Commissioner of Social Security, and against Plaintiff Piedad Q. Lopez.

3  IT IS SO ORDERED.

4  **Dated:    January 27, 2011**             **/s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE